## PATRICK RILEY vs. LUTHER PARKS & others.

A., by his deed, granted to G. a privilege and free liberty to drain and carry off, through A.'s land, the water flowing from G.'s factory, by way of a canal, without obstruction: A. afterwards, by deed, granted to W. the right to flow any and such portion of A.'s land as might be found necessary to use and improve W.'s water privilege below A.'s land, by erecting a dam of such height and dimensions as to set back the water upon said land in such way and manner as not to obstruct ɔr interfere with the right of G. to drain and carry off the water, from his factory, through said land, as granted by A.'s deed to G.; meaning and intending thereby (as was stated therein) to grant to the said W., his heirs and assigns, the right and liberty to use and occupy any of said land, by flowing the same by a dam of sufficient height to flow back the water to the tail race or canal in which the water was conveyed, through said land, from G.'s factory, without interfering with the right of said G. to drain and convey the water from said factory, as it was granted and sold to said G., by the said A., by his deed aforesaid; for a particular descrip- tion of said right and privilege, reference to be had to said deed: There was also a provision in A.'s deed to W., that the damages occasioned by the flowing of A.'s land by W.'s dam should be appraised and liquidated by S., or by three men mutually agreed on by the parties. *Held*, that A.'s deed to W. granted the right to flow only to the bottom of the canal, and not the right to flow into the canal, even though the flowing into it might be so little as not to disturb or interfere with G.'s right to drain and convey through it the water from his factory.

THIS was a complaint, under the Rev. Sts. *c.* 116, for flow- ing lands in Millbury, by the respondents' mill dam.

At the trial in the court of common pleas, before *Merrick*, J. the respondents admitted the complainant's title to the land described in his complaint, and that it had been flowed, by their dam, to a point seventeen inches above the surface of the water, as it flowed, in January 1817, out of the lower end of the canal or tail race of the factory of the Goodell Manu- facturing Company. It was in evidence that there was a fall of two or three feet between the surface of the water in the wheel-pit of said factory, and the surface of the water at the lower end of said canal, as it flowed in January 1817; and the respondents claimed a right to flow the complainant's land to any height, provided they did not obstruct, or in any way impede, the said company's wheel or mill, or did not obstruct or deaden the flow of water from said wheel-pit, as it flowed at the aforesaid date. In support of this claim thus to flow, the respondents gave in evidence two deeds, by which, through

sundry mesne conveyances, the validity of which was admitted by the complainant, they contended that they had acquired the right to flow to the abovementioned height. One of these deeds, dated August 13th 1826, was from Joshua Wait and John Wait, who were then owners of the land flowed, to David Wilkinson and others, under whom the respondents hold. The grant, in this deed, was thus: "The right to flow any and such portion of our lands, as may be found necessary to use and improve the water privilege which the said David Wilkinson purchased of David P. Chase of Millbury, by erecting a dam across the Blackstone River on the said David P. Chase's Wait farm, so called, of such height and dimensions as to set back the water on to any of our land, in such way and manner as not to obstruct or interfere with the right the Goodell Manufacturing Company have to drain and carry off the waters from their factory in Millbury, through our said land, as granted, remised and released to Goodell, Trask & Co. by the said Joshua Wait, by his deed dated first day of January eighteen hundred and seventeen; meaning and intending hereby to grant, bargain and sell unto the said David," (and others named,) "their heirs and assigns, the right and liberty to use and occupy any of our land, by flowing the same by a dam erected on the Wait farm aforesaid, of sufficient height to flow back the river to the tail race or canal, in which the water is conveyed through the grantors' land to the said river, from the old woollen factory of the Goodell Manufacturing Company, without interfering with over the right of the said Goodell Manufacturing Company to drain and convey the water from their said factory, as it was granted and sold to Asa Goodell, Trask & Company, by the said Joshua, by his deed aforesaid: For a particular description of said right and privilege, reference is to be had to the said deed of Joshua Wait to Asa Goodell, Trask & Company. Provided, however, that all damages, which the grantors may sustain by flowing their lands as aforesaid, shall be appraised and liquidated by the Hon. Jonas Sibley of Sutton; and in case of his decease or inability, then the said damages are to be estimated

36 *

and settled by three discreet and disinterested men of the county of Worcester, to be mutually agreed on and selected by the parties hereto. The aforesaid appraisement and estimation of damages is to be made at any time after the completion of the dam aforesaid, and the actual flowing of the land, upon the request of either party to this instrument, their heirs, executors, administrators or assigns. And all papers, that may be necessary further to secure the parties in their respective rights and obligations, are to be duly executed and delivered to each other."

The other of these deeds was that above referred to, made on the 1st of January 1817, by said Joshua Wait to Asa Goodell, Aaron Trask and others, which was as follows: "I do, by these presents, release and forever quitclaim unto them, the said Goodell, Trask & Company, their heirs and assigns, all claim for damages in consideration of their opening a canal through my land to take off the water from their woollen factory in Millbury aforesaid, and for occupying said canal to the present time. Also I release and quitclaim, as aforesaid, a privilege and free liberty for them the said Goodell, Trask & Company, their heirs and assigns, to drain and carry off the water from their said factory, in the same quantity, and in the same manner, which they have heretofore done and now do, and not otherwise, through my land, by the way of the said canal, without obstruction, hindrance or molestation."

The judge ruled, that by virtue of these deeds the respondents had no right to flow the complainant's land any higher than up to the lower end of the canal or tail race of said company, as it was in January 1817. A verdict was returned for the complainant, and the respondents alleged exceptions to said ruling.

*Bacon & Miles*, for the respondents.

*E. Clarke*, for the complainant.

HUBBARD, J. The complainant is the owner of the land alleged to be flowed, and the respondents are the owners of a mill and dam erected on the land and privilege below the complainant's land. The flowing, as alleged, is admitted

by the respondents, and they justify under deeds from Joshua Wait, and Joshua and John Wait, from whom also the complainant deduces his title ; and the rights of the respective parties are to be determined by the construction of the deeds under which the respondents claim the right to flow.

The first deed of Joshua Wait, bearing date January 1s; 1817, was made to Asa Goodell and others who were the owners of a mill privilege on the land lying on the river above Wait's land. After releasing all claims for damages in consequence of their opening a canal through his land to let off the water from their mill, and for occupying it, he released and quitclaimed to them a privilege and free liberty for them, the said Goodell and others, their heirs and assigns, to drain and carry off the water from their said factory, in the same quantity, and in the same manner, which they had theretofore done, and then did, and not otherwise, through his land, by the way of the said canal, without obstruction, hindrance or molestation. Afterwards, David Wilkinson and others, having purchased of David P. Chase a piece of land and a mill privilege on the river below Wait's land, wished to use it ; but, in erecting a dam for the purpose, the water would be thrown back upon the Wait land ; and they therefore purchased of Joshua Wait, and of John Wait who had become an owner with Joshua, the right to flow on to their land. This right was to flow the Wait land, by erecting their dam of such height and dimensions as to set back the water on to the land, in such a way and manner as not to obstruct or interfere with the right which the Goodell Manufacturing Company had to drain and carry off the water from their factory through the land ; and, in the language of the deed, it was meant and intended to grant, bargain and sell unto the said David Wilkinson and others, the right and liberty to use and occupy any of the grantors' land, by flowing the same by a dam erected on the Wait farm, " of sufficient height *to flow back the river to* the tail race or canal " in which the water was then conveyed through the grantors' land to the river, from the "woollen factory of Goodell and others, without interfering

with over the right of the said Goodell Manufacturing Company to drain and convey the water from their said factory, as it was granted and sold to Asa Goodell and others." And then there was a provision (which is set out at large in the bi l of exceptions) for the settlement of the damages so caused ᵇy flowing the grantors' lands.

This case depends upon the construction of the said deed ᴐf Joshua and John Wait to David Wilkinson and others, under whom the respondents claim. The respondents contend that, by the terms of that deed, they may flow to any height that does not interfere with the grant to Goodell and others to draw the water freely through the canal ; and that the words, which mention the tail race or canal, are words of description merely, and do not limit the height to which the respondents may flow.

In construing this deed, the whole clause containing the grant is to be taken together ; and thus considering it, we are of opinion that it is not a right to flow to any height that will not obstruct or interfere with the right granted to Goodell and others, but that it is a definite grant, and is limited precisely *to* the tail race or canal from the Goodell mills, and that it does not extend beyond that, though it might not interfere with the prior grant.

The object of the grantors was, evidently, to prevent dispute in relation to the respective rights granted to the different parties ; and to accomplish this, the right to raise the water is restricted to the mouth of the tail race or canal ; and going no further than that, no interference could arise — the rights of the Goodell Company not being affected, and the new created rights being defined.

It is not important to determine whether the Waits themselves could flow the water above the mouth of the canal. The question in this case is this : Was such a grant made to Wilkinson and others? And we are of opinion that it was not.

This construction given to the deed is strengthened by the provision contained in it respecting the compensation to be

made for the damages arising from flowing the land, which were to be settled by Mr. Sibley, or, in case of his not serving, by three discreet persons to be agreed upon by the parties. We may presume that this claim was settled in some way, at or near the time, or that the right to damages was waived.

It does not appear, in the facts before us, at what time the respondents raised their dam. Supposing it has been done within three years, (Rev. Sts. *c.* 116, § 4,) and in consequence of it the flowing has been increased to the height of seventeen inches; then it would seem that the complainant, or those under whom he claims, have received no compensation for such flowing. But however that may be, as the right was not granted by the deed under which the respondents claim, the exceptions are overruled, and the cause is remitted to the court of common pleas for further proceedings.